No. 13-1821

# United States Court of Appeals
# for the Fourth Circuit

JAMES PRINGLE SCHEIDER, JR. AND TAFFY G. SCHEIDER,
*Plaintiffs-Appellants*,

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
OF THE INDYMAC INDA MORTGAGE LOAN 2006-AR2 MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-AR2 UNDER THE POOLING AND SERVICING AGREEMENT
DATED AUGUST 1, 2006; INDYMAC MORTGAGE SERVICES; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INCORPORATED; AND ONEWEST BANK, F.S.B.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of South Carolina, Beaufort Division
No. 9:11-cv-00395-SB

## BRIEF OF APPELLEES

B. Rush Smith, III
Brian P. Crotty
Sarah B. Nielsen
NELSON MULLINS
   RILEY & SCARBOROUGH LLP
1320 Main Street / 17th Floor
Columbia, SC  29201
(803) 799-2000
rush.smith@nelsonmullins.com
brian.crotty@nelsonmullins.com
sarah.nielsen@nelsonmullins.com

Marc James Ayers
Jeffrey M. Anderson
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203
(205) 521-8000
mayers@babc.com
janderson@babc.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13:1821__         Caption: __James P. Scheider, Jr. and Taffy G. Scheider v. Deutsche Bank et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Deutsche Bank National Trust Company, as Trustee of the IndyMac INDA Mortgage Loan 2006-AR2__
(name of party/amicus)

__Mortgage Pass-Through Certificates, Series 2006-AR2 under  Pooling and Servicing Agreement 8/1/06__

who is _____Appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                               ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      With respect to Deutsche Bank National Trust Company, 100% of its stock is owned by
      Deutsche Bank Holdings, Inc.  Deutsche Bank Holdings, Inc. is 100% owned by Deutsche Bank
      Trust Corporation.  Deutsche Bank Trust Corporation is 100% owned by Taunus Corporation.
      Taunus Corporation is 100% owned by Deutsche Bank AG, which is a publicly traded company.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:
      Deutsche Bank National Trust Company does not own ten percent or more of any other publicly
      held corporation.

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/SARAH B. NIELSEN                                    Date:        7/12/13

Counsel for: Deutsche Bank

## CERTIFICATE OF SERVICE
****************************

I certify that on _____7/12/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Roberts Vaux, Esquire
Antonia Lucia, Esquire
James Scheider, Esquire
Mark Berglind, Esquire
Attorneys for Appellants
PO Box 769
Bluffton, SC 29910

Barrett R. Brewer, Esquire
Attorney for First Federal Savings & Loan Association
of Charleston
126 Seven Farms Drive, Suite 200
Charleston, SC 29492

/s/SARAH B. NIELSEN                                    7/12/13
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1821__    Caption: _James P. Scheider, Jr. and Taffy G. Scheider v. Deutsche Bank et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Mortgage Electronic Registration Systems, Inc._
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       MERS is not a publicly held company, but is instead a wholly-owned subsidiary of MERSCORP, Inc.  MERS does not own ten percent or more of any outstanding shares of any publicly held companies.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/SARAH B. NIELSEN                              Date:        7/12/13

Counsel for: MERS

## CERTIFICATE OF SERVICE
***************************

I certify that on _____7/12/13_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Roberts Vaux, Esquire                          Barrett R. Brewer, Esquire
Antonia Lucia, Esquire                         Attorney for First Federal Savings & Loan Association
James Scheider, Esquire                        of Charleston
Mark Berglind, Esquire                         126 Seven Farms Drive, Suite 200
Attorney for Appellants                        Charleston, SC 29492
PO Box 769
Bluffton, SC 29910

/s/SARAH B. NIELSEN                                        7/12/13
        (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-1821__        Caption: __James P. Scheider Jr. and Taffy G. Scheider v. Deutsche Bank et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__OneWest Bank, FSB and IndyMac Mortgage Services, a division of OneWest Bank, FSB__
(name of party/amicus)

_____

who is _____Appellee(s)_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      OneWest Bank, FSB operates as a subsidiary of OneWest Bank Group LLC.  OneWest Bank is a privately held company.  Additionally, IndyMac Mortgage Services is a division of OneWest Bank, FSB, which operates as a subsidiary of OneWest Bank Group LLC.  OneWest Bank is a privately held company.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/SARAH B.  NIELSEN                    Date:        7/12/13

Counsel for: OneWest Bank, FSB and IMMS

## CERTIFICATE OF SERVICE
***************************

I certify that on _____7/12/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Roberts Vaux, Esquire
Antonia Lucia, Esquire
James Scheider, Esquire
Mark Berglind, Esquire
Attorneys for Appellants
PO Box 769
Bluffton, SC 29910

Barrett R. Brewer, Esquire
Attorney for First Federal Savings & Loan Association of Charleston
126 Seven Farms Drive, Suite 200
Charleston, SC 29492

/s/SARAH B. NIELSEN                                        7/12/13
(signature)                                                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1821__       Caption: _Scheider v. Deutsche Bank National Trust Co. et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_OneWest Bank, FSB and IndyMac Mortgage Services, a division of OneWest Bank, FSB_____
(name of party/amicus)

_____

who is _____Appellee(s)_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                          ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      OneWest Bank, FSB operates as a subsidiary of OneWest Bank Group LLC. OneWest Bank is a privately held company. Additionally, IndyMac Mortgage Services is a division of OneWest Bank, FSB, which operates as a subsidiary of OneWest Bank Group LLC. OneWest Bank is a privately held company.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
      If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☑YES ☐NO
    If yes, identify entity and nature of interest:

    Ocwen Loan Servicing, LLC acquired the servicing rights to the Appellants' mortgage loan from Appellee IndyMac Mortgage Services, a division of OneWest Bank, FSB.  Ocwen Loan Servicing, LLC is a subsidiary of Ocwen Financial Corp., which is publicly traded on the New York Stock Exchange.

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Jeffrey M. Anderson                            Date:        12/13/13

Counsel for: OneWest Bank, FSB and IMMS

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____12/13/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Roberts Vaux
Antonia T. Lucia
Mark S. Berglind
Vaux & Marscher, PA
P.O. Box 769
Bluffton, SC 29910

s/ Jeffrey M. Anderson                                        12/13/13
        (signature)                                              (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................... viii

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE..............................................................2

STATEMENT OF FACTS ...................................................................4

      A.    In May 2006, the Scheiders execute a Note for
           $1,178,000 and a Mortgage to secure the Note. ........................5

      B.    In June 2010, the Scheiders default on their
           mortgage loan.............................................................................8

      C.    Deutsche Bank holds the Note, which bears a
           "blank" indorsement, and the Mortgage, which
           was assigned to it by MERS. ....................................................9

SUMMARY OF THE ARGUMENT .....................................................11

ARGUMENT ....................................................................................13

    I.    The District Court Properly Ruled That Under South
          Carolina Law, the Holder of the Note Is Entitled to
          Enforce the Mortgage Securing the Note...........................................14

      A.    Under South Carolina law, the holder of a note
           indorsed in blank may enforce the note, and the
           mortgage follows the note.........................................................14

      B.    The district court properly relied on this Court's
           decision in *Horvath* to reject the Scheiders' "split
           the note" theory........................................................................18

    II.    The District Court Properly Rejected the Scheiders'
          Challenges to the Assignments of Their Note and
          Mortgage. .................................................................................22

i

A. The Scheiders are not parties to, or third-party beneficiaries of, the assignments and therefore lack standing to challenge their validity. ........................................... 23

B. The Scheiders cannot challenge the assignments based on alleged violations of the Pooling and Servicing Agreement to which they are not parties. ................. 25

C. The district court properly rejected the Scheiders' claim that MERS cannot assign the right to foreclose. ................................................................... 29

CONCLUSION ....................................................................... 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*BAC Home Loans Servicing, L.P. v. Kinder*,
731 S.E.2d 547 (S.C. 2012) ..........................................................................31

*Ballou v. Young*,
20 S.E. 84 (S.C. 1894) .......................................................................... 17, 21

*Bank of America, N.A. v. Bassman FBT, LLC*,
981 N.E.2d 1 (Ill. App. Ct. 2012) .................................................................25

*Bank of America, N.A. v. Draper*,
746 S.E.2d 478 (S.C. Ct. App. 2013) ..................................................... 17, 21

*BCD, LLC v. BMW Manufacturing Co.*,
2008 WL 304878 (D.S.C. Jan. 31, 2008), *aff'd*,
360 Fed. Appx. 428 (4th Cir. 2010) (unpublished) ......................................33

*Bernardo v. National City Real Estate Services*,
435 Fed. Appx. 240 (4th Cir. 2011) (unpublished) (per curiam) .................20

*Brown v. Prudential Insurance Company of America*,
40 S.E.2d 637 (S.C. 1946) ...........................................................................32

*Bryant v. Bell Atlantic Maryland, Inc.*,
288 F.3d 124 (4th Cir. 2002) ........................................................................14

*Burnett v. MERS, Inc.*,
706 F.3d 1231 (10th Cir. 2013) ............................................................. 30, 31

*Carmack v. Bank of New York Mellon*,
2013 WL 4529871 (6th Cir. Aug. 27, 2013) (unpublished).................. 30, 31

*Chapman v. Bank of America*,
2013 WL 5925988 (6th Cir. Nov. 6, 2013) (unpublished)...........................27

*Cosey v. Prudential Insurance Co. of America*,
735 F.3d 161 (4th Cir. 2013) ........................................................................13

*Culhane v. Aurora Loan Services of Nebraska*,
    708 F.3d 282 (1st Cir. 2013)..........................................................................24

*Edward v. BAC Home Loans Servicing, L.P.*,
    2013 WL 4400102 (11th Cir. Aug. 16, 2013) (unpublished)
    (per curiam) ...................................................................................................27

*Farkas v. GMAC Mortgage, LLC*,
    2013 WL 6231114 (5th Cir. Dec. 2, 2013)...................................................33

*Hahn v. Smith*,
    154 S.E.112 (S.C. 1930) ....................................................................... 16, 21

*Hedgepeth v. Parker's Landing Property Owners Association*,
    388 Fed. Appx. 242 (4th Cir. 2010) (unpublished) ...................................32

*Hien Pham v. Bank of New York*,
    856 F. Supp. 2d 804 (E.D. Va. 2012).........................................................21

*Horvath v. Bank of New York, N.A.*,
    641 F.3d 617 (4th Cir. 2011) ............................................................ passim

*In re Correia*,
    452 B.R. 319 (1st Cir. BAP 2011) (per curiam)..........................................27

*In re Kain*,
    2012 WL 1098465 (Bankr. D.S.C. Mar. 30, 2012),
    *aff'd*, 2013 WL 1115597 (D.S.C. Mar. 18, 2013) ......................................17

*In re Kain*,
    2013 WL 1115597 (D.S.C. Mar. 18, 2013).......................................... 27, 30

*In re McFadden*,
    471 B.R. 136 (Bankr. D.S.C. 2012).............................................................24

*In re Merritt Dredging Co.*,
    839 F.2d 203 (4th Cir. 1988) ............................................................... 14, 15

*In re Neals*,
    459 B.R. 612 (Bankr. D.S.C. 2011).............................................................16

iv

*In re Smoak*,
    461 B.R. 510 (Bankr. S.D. Ohio 2011) ......................................................28

*In re Walker*,
    466 B.R. 271 (Bankr. E.D. Pa. 2012) ............................................. 10, 27, 28

*In re Washington*,
    468 B.R. 846 (Bankr. W.D. Mo. 2011) ......................................................28

*In re Woodberry*,
    383 B.R. 373 (Bankr. D.S.C. 2008)......................................................... 16, 17

*ITCO Corp. v. Michelin Tire Corp., Commercial Division*,
    722 F.2d 42 (4th Cir. 1983) ......................................................................14

*Joye v. Heuer*,
    813 F. Supp. 1171 (D.S.C. 1994) ...............................................................15

*Kramer v. Federal National Mortgage Association*,
    2013 WL 5273224 (5th Cir. Sept. 19, 2013) (unpublished)
    (per curiam) ....................................................................................... 30, 31

*Larota-Florez v. Goldman Sachs Mortgage Co.*,
    441 Fed. Appx. 202 (4th Cir. 2011) (unpublished) (per curiam) ........... 21, 31

*Livingston v. Atlantic Coast Line Railroad. Co.*,
    180 S.E. 343 (S.C. 1935) ...........................................................................15

*McDaniel v. Stroud*,
    106 F. 486 (4th Cir. 1901) .........................................................................17

*McFadden v. Federal National Mortgage Association*,
    525 Fed. Appx. 223 (4th Cir. 2013) (unpublished) ......................................20

*Midfirst Bank, SSB v. C.W. Haynes & Co.*,
    893 F. Supp. 1304 (D.S.C. 1994) ......................................................... 16, 17

*Mullis v. First Charter Bank*,
    2013 WL 3899888 (W.D.N.C. July 29, 2013) .............................................21

*National Manufacture & Stores Corp. v. Whitman*,
    93 F.2d 829 (4th Cir. 1938) ............................................................32

*O'Dell v. Deutsche Bank National Trust Co.*,
    2013 WL 2389874 (E.D. Va. May 30, 2013) ..............................21

*R.J. Griffin & Co. v. Beach Club II Homeowners Association*,
    384 F.3d 157 (4th Cir. 2004) ................................................. 23, 26

*Reese v. U.S. Bank National Association*,
    2012 WL 1952819 (D.S.C. Apr. 30, 2012)
    (report and recommendation), *adopted by* 2012 WL 1952295
    (D.S.C. May 30, 2012) ...................................................... 21, 24, 30

*Reinagel v. Deutsche Bank National Trust Co.*,
    735 F.3d 220 (5th Cir. 2013) ................................................. 24, 27

*Shanaghan v. Cahill*,
    58 F.3d 106 (4th Cir. 1995) .............................................................2

*Sheppard v. BAC Home Loans Servicing, LP*,
    2012 WL 204288 (W.D. Va. Jan. 24, 2012)................................31

*Stokes v. Westinghouse Savannah River Co.*,
    206 F.3d 420 (4th Cir. 2000) .......................................................23

*Swindler v. Swindler*,
    584 S.E.2d 438 (S.C. 2003) .........................................................16

*TCX, Inc. v. Commonwealth Land Title Insurance Co.*,
    928 F. Supp. 618 (D.S.C. 1995) ..................................................26

*Thornton v. Cessna Aircraft Co.*,
    886 F.2d 85 (4th Cir. 1989) .........................................................15

*Union National Bank v. Cook*,
    96 S.E. 484 (S.C. 1918) ..............................................................17

*Wolf v. Federal National Mortgage Association*,
    830 F. Supp. 2d 153 (W.D. Va. 2011), *aff'd*,
    512 Fed. Appx. 336 (4th Cir. 2013) (unpublished) (per curiam) ..................21

*Wolf v. Federal National Mortgage Association*,
    512 Fed. Appx. 336 (4th Cir. 2013) (unpublished)
    (per curiam) ...................................................................... 23, 26, 30

*Woods v. Wells Fargo Bank, N.A.*,
    733 F.3d 349 (1st Cir. 2013)......................................................27

**Statutes**

28 U.S.C. § 1291 ................................................................................. ix

28 U.S.C. § 1331 ............................................................................... viii

28 U.S.C. § 1367 ............................................................................... viii

S.C. Code Ann. § 36-1-105 ...............................................................14

S.C. Code Ann. § 36-1-201 ...............................................................16

S.C. Code Ann. § 36-3-203 ...............................................................16

S.C. Code Ann. § 36-3-205 ........................................................... 9, 16

S.C. Code Ann. § 36-3-301 ...............................................................16

**Rules**

Fed. R. Civ. P. 56(a).........................................................................14

**Other Authorities**

27 S.C. Jur. *Mortgages* § 173 (updated 2013) ......................................17

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants James and Taffy Scheider filed this lawsuit in South Carolina state court in December 2010, seeking to avoid a foreclosure on their mortgaged property. (J.A. 31-91.) Defendants-Appellees Deutsche Bank National Trust Company ("Deutsche Bank"), IndyMac Mortgage Services ("IMMS"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and OneWest Bank, F.S.B. ("OneWest") (collectively "Defendants") removed the case to federal court on the ground that the Complaint asserted several claims arising under federal law. (J.A. 92-97.) The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.

The First Amended Complaint—the operative pleading here—asserted claims against First Federal Savings & Loan Association of Charleston ("First Federal") for breach of contract and breach of contract accompanied by fraudulent act; against Mortgage Network, Inc. ("Mortgage Network") for negligent misrepresentation; against Mortgage Network, Deutsche Bank, IMMS, MERS, OneWest, Credit Suisse and Credit Suisse Securities, LLC ("Credit Suisse") for civil conspiracy, declaratory judgment, breach of fiduciary duty, accounting, and breach of contract; and against all the defendants to quiet title to the Scheiders' property. (J.A. 98-124.) In response to the Amended Complaint, Deutsche Bank filed a counterclaim to foreclose on the mortgaged property. (J.A. 125-51.)

The district court disposed of all claims against all parties. Credit Suisse was never served and thus never became a party to this case. The claims against Mortgage Network were dismissed by stipulation (Docket Entry 57), and the claims against First Federal were disposed of by a consent order (Docket Entry 116). On April 11, 2013, the district court granted summary judgment to the remaining Defendants on all of the Scheiders' claims against them. (J.A. 405-18.) All that was left was Deutsche Bank's foreclosure counterclaim, which the district court dismissed without prejudice on May 29, 2013. (J.A. 453-54.)

On June 27, 2013, the Scheiders filed their notice of appeal. (J.A. 455-56.) This Court has jurisdiction under 28 U.S.C. § 1291 and Fed. R. App. P. 4.

## STATEMENT OF THE ISSUES

I.    Whether the district court properly ruled that under South Carolina law, the holder of the Scheiders' note is entitled to enforce the mortgage. More specifically—

A.    whether, under South Carolina law, the holder of a note indorsed in blank is entitled to enforce the note, and the mortgage follows the note; and

B.    whether the district court properly followed this Court's decision in *Horvath v. Bank of New York, N.A.*, 641 F.3d 617 (4th Cir. 2011), in rejecting the Scheiders' "split the note" theory;

II.    Whether the district court properly rejected the Scheiders' challenges to the assignments of their note and mortgage. More specifically—

A.    whether the Scheiders lack standing to challenge the assignments at all, where they were not parties to, or third-party beneficiaries of, those assignments;

B.    whether the Scheiders lack standing to invoke the Pooling and Servicing Agreement to change the applicable law or invalidate the assignments, where they were not parties to, or third-party beneficiaries of, that contract; and

C.    whether MERS, the named mortgagee, was authorized to assign its rights under the mortgage, including the right to foreclose.

1

## STATEMENT OF THE CASE

James and Taffy Scheider have been living in their million-dollar home for more than three years now without making a single scheduled mortgage payment during that time.  It is undisputed that the Scheiders executed a note and mortgage for a $1,178,000 loan; the Scheiders defaulted on the loan and have refused to cure the default; and they owe *someone* on the note "[w]ithout question."  (J.A. 185.) Nevertheless, the Scheiders say *no one* can foreclose on their mortgaged property. (J.A. 117-18, 120-21.)   The district court rejected that claim, and this is the Scheiders' appeal.

On December 7, 2010—six months after defaulting on their mortgage—the Scheiders filed a Complaint in South Carolina state court, seeking to head off a likely foreclosure action.  (J.A. 31-91.)  After the Defendants removed the case to the district court (based on federal-law claims in the Complaint) (J.A. 92-97), the Scheiders filed an Amended Complaint (J.A. 98-124).   The Amended Complaint asserted state-law causes of action against the Defendants for civil conspiracy, declaratory judgment, breach of fiduciary duty, accounting, quiet title, and breach of contract.[1]   (J.A. 114-22.)   Specifically, the Scheiders sought a declaratory

---

[1]      The Amended Complaint did not include the federal-law claims that were the basis for removal.  The district court had "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims [had] been extinguished."  *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *id.* at 109 ("The doctrine of supplemental jurisdiction indicates that federal courts generally

judgment that the Defendants "do not have standing to bring suit on the Note and Mortgage based on the failure of the same to comply with the terms of the [Pooling and Servicing Agreement] and are forever barred from bringing any such suit or action." (J.A. 117-18.) Deutsche Bank, the holder of the note and mortgage, asserted a counterclaim for foreclosure. (J.A. 125-51.)

After discovery, the Defendants filed a motion for summary judgment as to all of the Scheiders' claims, and Deutsche Bank moved for summary judgment on its foreclosure counterclaim. (J.A. 152-54.) At the hearing on the motions, the Scheiders abandoned their breach-of-contract and civil conspiracy claims. (J.A. 407.) Their only remaining claims were (1) declaratory judgment; (2) breach of fiduciary duty; (3) accounting; and (4) quiet title. (J.A. 407.) To support those claims, the Scheiders argued that none of the Defendants were entitled to enforce the mortgage. The Scheiders conceded that if the court disagreed with that argument, and found that Deutsche Bank (or any other Defendant) was entitled to enforce the mortgage, all of their claims would "go out the window." (J.A. 417.)

On April 11, 2013, the district court entered an Order granting summary judgment in favor of the Defendants on all of the Scheiders' claims. (J.A. 405-18.) The court noted that there was "no genuine issue of material fact as to the existence

---

have discretion to retain *or* dismiss claims when the federal basis for an action drops away").

of the debt or the [Scheiders'] failure to pay the debt." (J.A. 417.) The court then rejected all of the Scheiders' arguments, concluding that (1) South Carolina law governs the note and the mortgage; (2) the note is a negotiable instrument, and under South Carolina law, the related mortgage follows the note; and (3) the Scheiders lack standing to challenge the assignments of the note and mortgage based on a Pooling and Servicing Agreement to which they are not parties. (J.A. 416-17.) While the district court granted summary judgment to the Defendants on all of the Scheiders' claims, the court denied Deutsche Bank's motion for summary judgment on its foreclosure counterclaim. (J.A. 417.) Deutsche Bank then voluntarily dismissed that counterclaim. (J.A. 453-54.)

This appeal followed. The Scheiders have challenged the summary judgment on their claims for declaratory judgment, breach of fiduciary duty, accounting, and quiet title. They have not challenged the judgment on the breach-of-contract and civil-conspiracy claims they abandoned below.

## STATEMENT OF FACTS

Plaintiffs James and Taffy Scheider are familiar with mortgage financing. Mr. Scheider practiced law in South Carolina from 1981 to 2002. (J.A. 157-61). In those 21 years of law practice, he focused on real estate, "[r]epresenting developers, primarily in negotiating deals between developers and banks." (J.A. 160-61.) Those deals, including multi-million-dollar deals, typically involved the

4

execution of notes and mortgages.  (J.A. 161.)  In addition, Mr. Scheider handled "several hundred" residential real-estate closings.  (J.A. 162.)  When he left the practice of law in 2002, Mr. Scheider went to work as a licensed real estate broker and a salesman for a real estate development in Bluffton, South Carolina.  (J.A. 164-65.)  For her part, Mrs. Scheider was a licensed real estate agent for 12 years, from 1998 to 2010.  (J.A. 209-10.)

While they were completing renovations to their home in Bluffton, the Scheiders decided to refinance their existing home loan.  (J.A. 168-69.)  The refinancing involved the execution of a note and a mortgage securing the note.

A.    <u>In May 2006, the Scheiders execute a Note for $1,178,000 and a Mortgage to secure the Note.</u>

On May 9, 2006, the Scheiders obtained a loan for $1,178,000 from Mortgage Network, Inc. ("Mortgage Network").  (J.A. 235-237.)  They signed an Adjustable Rate Note (the "Note") promising to pay the lender, Mortgage Network, $1,178,000 plus interest.  (J.A. 239, 251-54.)  The Note had a 30-year term, with interest-only payments required for the first 120 months and principal-and-interest payments required for the remaining 240 months.  (J.A. 251.)   The Note provided for an adjustable interest rate, never less than 2.25% or more than 12.125%.  (J.A. 252.)

The Note identified Mortgage Network as the "Lender," and further provided that "Lender may transfer this Note" and "Lender or anyone who takes

this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (J.A. 251.)  The Scheiders agreed that if they "[did] not pay the full amount of each monthly payment on the date it [was] due, [they would] be in default." (J.A. 253.)  In that event, the Note Holder might send a written notice demanding full payment of the outstanding principal and interest. (J.A. 253.)  The Note further provided that the Note Holder would be protected by a security instrument as well as the Note itself. (J.A. 253.)

That security instrument was the Mortgage executed by the Scheiders on May 9, 2006 and recorded in the Office of the Beaufort County Register of Deeds on May 16, 2006. (J.A. 241, 261-77.)  In a paragraph entitled "Governing Law; Severability; Rules of Construction," the Mortgage provided that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."[2] (J.A. 268.)  The Scheider's property is located in Bluffton, South Carolina. (J.A. 262.)

---

[2]     "Applicable Law" means "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (J.A. 261.)

6

The Mortgage identified Mortgage Network as the Lender and MERS—"solely as a nominee for Lender and Lender's successors and assigns"—as the "mortgagee." (J.A. 261.)  The Scheiders "mortgage[d], grant[ed] and convey[ed]" their property in Bluffton "to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale." (J.A. 262.)  The Scheiders expressly "underst[ood] and agree[d] that MERS [held] only legal title to the interests granted by [the Scheiders]" in the Mortgage, but MERS also "ha[d] the right[] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." (J.A.  262.)

The Mortgage also provided for transfers of various interests under the Note and Mortgage.  "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (J.A. 269.)  Any such sale "might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law." (J.A. 269.)  The Mortgage also provided, however, that a change of servicer might occur even apart from a sale of the Note.  (J.A. 269.)

In the event of a default by the Scheiders, the Lender was required to give notice of the default, the time allowed to cure the default, and the possibility of

foreclosure and sale of the property if the default were not cured.  (J.A. 270.)  "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand *and may foreclose* this Security Instrument by judicial proceeding."  (J.A. 270 (emphasis added).)

B.    In June 2010, the Scheiders default on their mortgage loan.

For the first three months of the loan, Mortgage Network was both the Lender and the Loan Servicer under the Mortgage.  In August 2006, Mortgage Network transferred the servicing rights to IndyMac Bank Home Loan Servicing. (J.A. 282-84.)  In March 2009, the servicing rights were transferred from IndyMac Bank Home Loan Servicing to IndyMac Mortgage Services ("IMMS"), a division of OneWest Bank, FSB.  (J.A. 286-87.)  The Scheiders understood that they were required to make their scheduled payments to their loan servicer, which "sends out the invoices and collects payments."  (J.A. 163.)  The Scheiders made their scheduled mortgage payments to the appropriate Loan Servicer from July 2006 through May 2010.  (J.A. 176.)

Beginning in June 2010, the Scheiders stopped making their monthly mortgage payments.  (J.A. 176.)  On July 6, 2010, and then again on July 17, 2010, IMMS notified the Scheiders that they had "fallen behind on [their] mortgage payments" and described several ways to help ensure that the Scheiders could stay

on their property.  (J.A. 303-06.)  On August 6, 2010, IMMS sent the Scheiders a

notice of default giving them 32 days to cure their default; absent a cure, IMMS

would accelerate the mortgage and initiate foreclosure proceedings.  (J.A. 308-09.)

To this day, the Scheiders have not cured their default.  In fact, they have not made

a single mortgage payment since May 2010.  The Scheiders have admitted that

they owe someone under the Note—"[w]ithout question."  (J.A. 185.)

> C.    Deutsche Bank holds the Note, which bears a "blank" indorsement,
>        and the Mortgage, which was assigned to it by MERS.

After the loan closing in May 2006, Mortgage Network indorsed the Note

with a "blank" indorsement in accordance with S.C. Code Ann. § 36-3-205(b).[3]

(J.A. 340.)  That blank indorsement was then converted to a "special" indorsement

in accordance with S.C. Code Ann. § 36-3-205(c), when the name "IndyMac Bank

FSB" was inserted in the blank space following the words "Pay to the order of."[4]

(J.A. 344).   IndyMac Bank FSB then indorsed the Note with another blank

indorsement.  (J.A. 344).  Deutsche Bank now possesses the Note.[5]

---

[3]     A "blank" indorsement does not identify the person to whom it makes the
instrument payable.  "When indorsed in blank, an instrument becomes payable to
bearer and may be negotiated by transfer of possession alone until specially
indorsed."  S.C. Code Ann. § 36-3-205(b).

[4]     Under S.C. Code Ann. § 36-3-205(c), a holder may convert a blank
indorsement into a special indorsement "by writing, above the signature of the
indorser, words identifying the person to whom the instrument is made payable."

[5]     The Scheiders have asserted that there are "three versions of the [N]ote."

The transfers of the Note were part of the securitization of the Scheiders' mortgage loan. "Securitization is a process in which lenders transfer mortgage loans into a single pool or trust and sell interests in that pool or trust to investors who receive certificates entitling them to share in the stream of income generated by the repayment of the underlying loans. The transfer of the mortgages into the pool and the creation of the securitized trust typically is memorialized in a document known as a 'pooling and servicing agreement.'" *In re Walker*, 466 B.R. 271, 273 n.2 (Bankr. E.D. Pa. 2012) (citation omitted). The Pooling and Servicing Agreement Dated as of August 1, 2006 ("PSA") governs the securitization at issue here. (J.A. 426-38.) The parties to the PSA are IndyMac MBS, Inc. (the depositor to the trust), IndyMac Bank, FSB (the seller and servicer of mortgage loans), and Deutsche Bank (as trustee for the trust). (J.A. 426.) The Scheiders are not parties to the PSA or beneficiaries of the trust.

As explained above, the Mortgage identified MERS (as nominee of Lender and its successors and assigns) as the mortgagee, with "legal title to the interests granted . . . in [the Mortgage]" as well as "the right to foreclose and sell the Property" in the event of default. (J.A. 261-62.) On August 10, 2011, MERS

---

Blue Br. 7-8, 14. That is not so. While there are multiple copies of the Note showing the addition of indorsements since its original execution (J.A. 333-44), there is only one Note bearing the Scheiders' signatures and containing the terms described above.

executed a written Assignment of Mortgage, transferring the Mortgage to Deutsche Bank.  (J.A. 279-80.)  The Assignment of Mortgage was recorded in the Office of the Beaufort County Register of Deeds.  (J.A. 279.)

Deutsche Bank holds both the Note and the Mortgage, and the Schediers' default is undisputed.  Nevertheless, the Scheiders claim that no Defendant—not even Deutsche Bank—has the right to foreclose on their property.  The Scheiders have been living on their mortgaged property since June 2010 without making a single mortgage payment.

## SUMMARY OF THE ARGUMENT

This case is an attempt by sophisticated borrowers admittedly in default on their mortgage loan to keep all the benefits of their loan without bearing the risk of foreclosure.  This Court has seen similar cases before, and has repeatedly affirmed dismissals or summary judgments against the borrowers.  Here, the district court rejected the Scheiders' argument that although they owe *someone* on their $1,178,000 note, *no one* has the right to foreclose on their mortgaged property.  That ruling was correct under applicable South Carolina law and this Court's decisions.

I.    The Note and Mortgage at issue here were made in South Carolina, by South Carolina borrowers, concerning a South Carolina property.  Those instruments are governed by South Carolina law.  Under South Carolina law, the

11

holder of the Note—which was indorsed in blank—is entitled to enforce the Note. And under South Carolina law, the Mortgage follows the Note, so that the holder of the Note also has the right to enforce the Mortgage with or without a formal assignment. It is undisputed that Deutsche Bank possesses the Note. The Scheiders suggest that South Carolina law is "evolving" away from the long-settled view that a transfer of a note carries with it the associated mortgage; they say the securitization of a mortgage loan "splits" the note from the mortgage. That argument is foreclosed by this Court's decision in *Horvath v. Bank of New York, N.A.*, 641 F.3d 617 (4th Cir. 2011). Applying ordinary principles of South Carolina commercial law and this Court's decision in *Horvath*, the district court properly concluded that the holder of the Note (Deutsche Bank) is entitled to enforce the Note and the Mortgage.

II. The district court also properly rejected the Scheiders' challenges to the assignments of their Note and Mortgage. At the outset, the Scheiders were not parties to, or third-party beneficiaries of, the assignments and therefore lack standing to challenge them. In any event, the Scheiders' arguments fail on their merits. The Scheiders say the PSA displaces South Carolina law with New York law, and violations of the PSA render the assignments void under New York law. As other courts have held, however, borrowers cannot invoke a PSA to make an "end run" around applicable Uniform Commercial Code rules or to invalidate an

12

assignment.  The PSA—which was executed by different parties after the Note and the Mortgage were executed by the Scheiders—does not alter the law applicable to those instruments.  And even if the Scheiders could establish a violation of the PSA (they have not done so yet), that would only make the assignments voidable at the option of a party to the PSA.

Putting aside the PSA, the Scheiders' argument that MERS lacked authority to assign the Mortgage also fails.  By its plain terms, the Mortgage made MERS the "mortgagee" with "power of sale" and the right to foreclose.  And by the terms of that instrument, the Scheiders mortgaged their property to MERS and its "assigns."  When MERS executed the Assignment of Mortgage to Deutsche Bank, it only did what the Mortgage authorized it to do.  And having taken the benefits of the Mortgage for more than four years, the Scheiders should be estopped from claiming that MERS never was the "mortgagee" with the rights granted to it in the Mortgage.

## ARGUMENT

The district court properly granted summary judgment to the Defendants on all of the Scheiders' claims.  This Court reviews a grant of summary judgment "*de novo*, applying the same standards as those governing the district court's review of the record." *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 170-71 (4th Cir. 2013).  Summary judgment is appropriate where "there is no genuine dispute as to

13

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing the grant of summary judgment, [this Court] can affirm on any legal basis supported by the record and [is] not confined to the grounds relied on by the district court." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

## I. The District Court Properly Ruled That Under South Carolina Law, the Holder of the Note Is Entitled to Enforce the Mortgage Securing the Note.

### A. Under South Carolina law, the holder of a note indorsed in blank may enforce the note, and the mortgage follows the note.

The district court properly applied South Carolina law in determining the meaning and enforceability of the Note and the Mortgage. As a federal court exercising supplemental jurisdiction over state-law claims, the district court was required to apply the substantive law, including the choice-of-law rules, of the forum state. *See In re Merritt Dredging Co.*, 839 F.2d 203, 205 (4th Cir. 1988); *ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983). The forum state is South Carolina.

"South Carolina has adopted the Uniform Commercial Code, including its choice of law provision . . . ." *Merritt Dredging*, 839 F.2d at 206. Under that provision, South Carolina's version of the UCC applies to "transactions bearing an appropriate relation to [South Carolina]," absent an agreement by the parties that another state's law should govern. S.C. Code Ann. § 36-1-105. In *Merritt*

14

*Dredging*, this Court interpreted Section 36-1-105 to mean that South Carolina's version of the UCC should apply where South Carolina has the "most significant relationship" to the transaction at issue. 839 F.2d at 206-07 (South Carolina law applied to a claim involving a commercial security agreement); *accord Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 89-90 (4th Cir. 1989) (South Carolina law applied to a breach-of-warranty claim).

South Carolina has the "most significant relationship," and therefore an "appropriate relation," to the mortgage transaction at issue here. The Note was made in South Carolina, by borrowers in South Carolina, relating to a property located in South Carolina. (J.A. 256-59.) Likewise, the Mortgage was executed by borrowers in South Carolina, concerning property located in South Carolina, at a closing conducted in South Carolina, and was recorded in South Carolina. (J.A. 261-77.) And to make the point even clearer, the Mortgage expressly provided that it would be governed by "the law of the jurisdiction in which the [mortgaged] property is located" (J.A. 268)—South Carolina. Under *Merritt Dredging* and *Thornton*, there is no doubt that South Carolina law governs the enforceability of the Note and the Mortgage.[6]

---

[6]     Even under traditional choice-of-law rules for contract claims, South Carolina law applies because it is the *lex loci contractu. See Livingston v. Atlantic Coast Line R.R. Co.*, 180 S.E. 343, 345 (S.C. 1935); *Joye v. Heuer*, 813 F. Supp. 1171, 1173 (D.S.C. 1994). The Scheiders appear to concede that South Carolina law governs the Note and the Mortgage, at least for some purposes. *See* Blue Br.

In South Carolina, "[a] note secured by a mortgage on real property is a negotiable instrument, and is thus governed by Article Three" of the UCC. *In re Neals*, 459 B.R. 612, 617 (Bankr. D.S.C. 2011) (citing *Swindler v. Swindler*, 584 S.E.2d 438, 440-41 (S.C. 2003)); *accord Midfirst Bank, SSB v. C.W. Haynes & Co.*, 893 F. Supp. 1304, 1312 n.3 (D.S.C. 1994). Under Article Three, the transfer of a note indorsed in blank "vests in the transferee any right [that] the transferor [possessed]," S.C. Code Ann. § 36-3-203(b), including the right to payment, *see In re Woodberry*, 383 B.R. 373, 378 (Bankr. D.S.C. 2008). "When indorsed in blank, an instrument becomes *payable to bearer* and may be negotiated by transfer of possession alone until specially indorsed." S.C. Code Ann. § 36-3-205(b) (emphasis added). The "holder" of a note, including the "person who is in possession" of a note indorsed in blank, is a "person entitled to enforce" the note. *Id*. §§ 36-1-201(20), 36-3-301.

Moreover, South Carolina common law has long recognized the "familiar and uncontroverted proposition . . . that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage." *Hahn v. Smith*, 154 S.E. 112, 115 (S.C. 1930); *accord Union Nat'l Bank v. Cook*, 96 S.E. 484, 486 (S.C.

---

15. Nevertheless, in an attempt to avoid South Carolina law, they argue that New York law governs the transfers of the Note and Mortgage, based on a choice-of-law provision in a *different* contract executed by *different* parties months *after* the Note and Mortgage were executed. *See* Blue Br. 15-16. That argument is wrong for reasons explained below.

16

1918); *Ballou v. Young*, 20 S.E. 84, 85 (S.C. 1894); *Bank of Am., N.A. v. Draper*, 746 S.E.2d 478, 481 (S.C. Ct. App. 2013).[7]  "The transfer of a note operates as an assignment of the mortgage given to secure it, in the absence of any provision to the contrary. . . . The note is the principal and the mortgage is the incident and follows the note in its delivery from one person to another."  27 S.C. Jur. *Mortgages* § 173 (updated 2013).  Thus, South Carolina law "does not require both possession of the note and a written assignment of the mortgage to prove ownership."  *In re Woodberry*, 383 B.R. at 376.

Mortgage Network, the original lender, indorsed the Scheiders' Note in blank (J.A. 340) and transferred the Note to IndyMac Bank, FSB (J.A. 344). IndyMac Bank, FSB then transferred the Note to Deutsche Bank, again with an indorsement in blank.  (J.A. 344.)  Deutsche Bank represented to the district court that it retains possession of the Note, and the Scheiders have not disputed that fact. Under South Carolina law, then, Deutsche Bank is the "holder" of the Note and has all the rights of the Lender under the Note, including the right to payment. More than that, the Mortgage followed the Note by operation of law, so that Deutsche Bank is entitled to enforce the Mortgage as well as the Note it secures.  A written

---

[7]     This Court and federal courts applying South Carolina law have recognized the same principle.  *See McDaniel v. Stroud*, 106 F. 486, 489 (4th Cir. 1901); *Midfirst Bank*, 893 F. Supp. at 1318; *In re Kain*, 2012 WL 1098465, at *7 (Bankr. D.S.C. Mar. 30, 2012), *aff'd*, 2013 WL 1115597 (D.S.C. Mar. 18, 2013).

assignment of the Mortgage was not necessary to give Deutsche Bank the right to enforce the Mortgage.[8]

The district court properly concluded that under South Carolina law, the holder of the Note, indorsed in blank, also holds the Mortgage and is entitled to enforce both instruments against the Scheiders.

B.    The district court properly relied on this Court's decision in *Horvath* to reject the Scheiders' "split the note" theory.

Citing two South Carolina trial court orders, the Scheiders say "[t]he law in this area is evolving" and (at least implicitly) suggest that the South Carolina Supreme Court would adopt their "split the note" theory. Blue Br. 28-34. Under that theory, "the securitization of a loan separates the note and mortgage" so that "the traditional rule that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage no longer has validity." Blue Br. 8. Rather than make new law as the Scheiders have requested, the district court properly applied South Carolina law as it currently exists in the reported decisions of South Carolina's appellate courts. (J.A. 411-12, 416.) And South Carolina law as it

---

[8]    Of course, the record shows that MERS (the named mortgagee) executed a written Assignment of Mortgage in 2011. (J.A. 279-80.) The Scheiders challenge the validity of that Assignment of Mortgage, but (as explained below) their arguments should be rejected. The Court need not reach that issue, however, because South Carolina law is clear that a formal, written assignment is not necessary to transfer a mortgage where the underlying note has been transferred.

18

currently exists is fully consistent with the decisions of this Court and other federal courts concerning the same issues.

This Court previously considered—and rejected—the very same "split the note" theory in *Horvath v. Bank of New York, N.A.*, 641 F.3d 617 (4th Cir. 2011). In that case, the borrower executed a note secured by a deed of trust, with MERS as the beneficiary of the deed of trust. *See id.* at 619. By their terms, the note and the deed of trust were freely transferable. *See id.* at 619-20. The lender "pooled [the borrower's] loan with others and then sold shares in the pool to investors. . . . As a natural consequence of the securitization process, [the borrower's] note changed hands" and was transferred to the Bank of New York. *Id.* at 620. The deed of trust, however, had not changed hands; MERS was still the beneficiary. *See id.* When the borrower stopped making payments, the Bank of New York appointed a substitute trustee to conduct a foreclosure sale. *See id.*

The borrower sued to quiet title to his property, arguing that the securitization of his mortgage loan split the note from the deed of trust, so that the Bank of New York (which held only the note) could not foreclose. *See id.* The district court rejected that argument, and this Court affirmed. Under long-settled Virginia law, the Court explained, "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred[,] [a]nd once transferred, the old adage about possession being nine-tenths of the law is, if anything, an

understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." 641 F.3d at 621. More than that, Virginia law provided that "interests in deeds of trust accompany the promissory notes that they secure." *Id*. at 623. "The transfer of [the borrower's] note thus necessarily involved a transfer of the underlying security." *Id*. Because the Bank of New York held the note at the time of foreclosure, it also held the deed of trust.

This Court in *Horvath* further explained that "common sense" (not just Virginia law) "suggests that things could not be any other way. If [the borrower] were correct in asserting that the transfer of a note splits it from the deed of trust, there would be little reason for notes to exist in the first place. One of the defining features of notes is their transferability, but on [the borrower's] view, transferring a note would strip it from the security that gives it value and render the note largely worthless. This cannot be—and is not—the law." 641 F.3d at 624 (citations omitted).

This Court has applied *Horvath* in cases similar to this one. In *McFadden v. Federal National Mortgage Association*, 525 Fed. Appx. 223, 230-31 (4th Cir. 2013) (unpublished), this Court affirmed the dismissal of borrowers' claims to quiet title and set aside a foreclosure in another case involving a note secured by a deed of trust naming MERS as the beneficiary. And in *Bernardo v. National City Real Estate Services*, 435 Fed. Appx. 240, 241 (4th Cir. 2011) (unpublished) (per

20

curiam), this Court affirmed the dismissal of a borrower's claims for declaratory judgment and to quite title in another case involving the securitization of a mortgage loan. *See also Larota-Florez v. Goldman Sachs Mortg. Co.*, 441 Fed. Appx. 202, 203 (4th Cir. 2011) (unpublished) (per curiam) (citing *Horvath* and affirming a summary judgment against borrowers on their claims for declaratory judgment and to quiet title).[9]

*Horvath* is persuasive here because South Carolina law and Virginia law are identical on the points relevant to the analysis in *Horvath*. South Carolina law, like Virginia law, recognizes the transferability of a note secured by a mortgage (akin to a deed of trust). And South Carolina law, like Virginia law, recognizes the rule that the transfer of a note carries with it the associated mortgage. *See Hahn*, 154 S.E. at 115; *Ballou*, 20 S.E. at 85; *Draper*, 746 S.E.2d at 481. Just as the Bank of New York was entitled to foreclose on the mortgaged property in *Horvath*, so Deutsche Bank—which indisputably holds the Note—is entitled to foreclose on the

---

[9]        District courts in this Circuit also have applied *Horvath* to reject arguments similar to the Scheiders' arguments here. *See Mullis v. First Charter Bank*, 2013 WL 3899888, at *4-5 (W.D.N.C. July 29, 2013); *O'Dell v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 2389874, at *14 (E.D. Va. May 30, 2013); *Hien Pham v. Bank of N.Y.*, 856 F. Supp. 2d 804, 810 (E.D. Va. 2012); *Reese v. U.S. Bank Nat'l Ass'n*, 2012 WL 1952819, at *3 (D.S.C. Apr. 30, 2012) (report and recommendation), *adopted by* 2012 WL 1952295 (D.S.C. May 30, 2012); *Wolf v. Federal Nat'l Mortg. Ass'n*, 830 F. Supp. 2d 153, 162-63 (W.D. Va. 2011), *aff'd*, 512 Fed. Appx. 336 (4th Cir. 2013) (unpublished) (per curiam).

21

Scheiders' property here.  "[C]ommon sense," as well as state law, "suggest[] that things could not be any other way."  *Horvath*, 641 F.3d at 624.

The Scheiders have no answer to *Horvath*.  Indeed, they fail even to cite *Horvath*, despite the facts that (1) *Horvath* is plainly applicable to the circumstances here, and (2) the district court plainly relied on *Horvath* in rejecting their claims (J.A. 411-12).  Their silence on this point is deafening.  Under *Horvath* and the South Carolina law described above, the district court properly concluded that the Scheiders' Mortgage followed their Note, and the holder of the Note—Deutsche Bank—is authorized to enforce the Mortgage.

## II.    The District Court Properly Rejected the Scheiders' Challenges to the Assignments of Their Note and Mortgage.

The Scheiders challenge the assignments of the Note and the Mortgage on two different grounds.  *First*, they say the assignments violated the terms of the Pooling and Servicing Agreement, rendering them void under New York law (which governs the PSA).  *Second*, they say the assignment of the Mortgage was invalid because MERS is incapable of assigning a mortgage as a matter of law. The Scheiders are wrong on both counts.  But the Court need not reach those issues because the Scheiders lack standing to challenge the assignments at all.

A.    <u>The Scheiders are not parties to, or third-party beneficiaries of, the assignments and therefore lack standing to challenge their validity.</u>

The Scheiders are strangers to the assignments at issue, and thus should not be heard to challenge those assignments. This Court, applying South Carolina law, has recognized that "a third person not in privity of contract with the contracting parties has no right to enforce a contract," except that "when the contract is made for the benefit of the third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004) (quotations omitted); *accord Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000). In other words, to claim the protections of a contract, the Scheiders must be parties to, or intended third-party beneficiaries of, that contract.

The Scheiders are not, and in their brief do not claim to be, parties to any assignment of their Note or Mortgage. The Scheiders also are not, and in their brief do not claim to be, intended third-party beneficiaries of any assignment.

In similar circumstances, this Court held that a borrower could not challenge the assignment of a note. *See Wolf v. Federal Nat'l Mortg. Ass'n*, 512 Fed. Appx. 336, 342 (4th Cir. 2013) (unpublished) (per curiam). "Without an enforceable contract right," the Court explained, the borrower "lack[ed] standing to attack the validity of the assignment. Furthermore, the assignment d[id] not affect [the

23

borrower's] rights or duties at all," because she "still ha[d] the obligation under the note to make payments.  In fact, the only thing the assignment affect[ed was] to whom [she would] make[] the payments." *Id*.  The borrower had "no interest in the assignment" and therefore had "no standing to challenge it." *Id*.  District courts in this Circuit have reached the same conclusion. *See Reese*, 2012 WL 1952819, at *3 ("Plaintiff is only a party to the Mortgage and, because the Assignment is a separate contract to which Plaintiff is not a party, she cannot question its validity"); *In re McFadden*, 471 B.R. 136, 161 (Bankr. D.S.C. 2012) ("Courts addressing the standing of a borrower to object to the validity of assignments of his loan have found that a borrower lacks standing to attack assignments due to his status as a third party").[10]

---

[10]       To support their contrary position, the Scheiders rely *entirely* on decisions from state and federal courts outside this Circuit. *See* Blue Br. 16-27.  Although the First and Fifth Circuits (applying the law of Massachusetts and Texas, respectively) have allowed borrowers to challenge assignments on grounds that would render an assignment void rather than merely voidable, *see Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 289-91 (1st Cir. 2013); *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 224-25 (5th Cir. 2013), the Scheiders have not shown that South Carolina law requires the same result.  And as explained below, the Scheiders' specific challenge would not be allowed even under that standard.

Because the Scheiders were not parties to the assignments at issue here, they lack standing to challenge those assignments.[11]  But even if the Court were to conclude otherwise, the Scheiders' arguments should be rejected on their merits.

B.  The Scheiders cannot challenge the assignments based on alleged violations of the Pooling and Servicing Agreement to which they are not parties.

The Scheiders' attempt to invoke New York law, and to invalidate the assignments of the Note and Mortgage, fails from the start because they are not entitled to claim the protections of the contract on which they rely.  The Scheiders say New York law governs the transfers of their Note and Mortgage because New York law governs the Pooling and Servicing Agreement that governs the securitized trust into which the Note was transferred in 2006.  *See* Blue Br. 15-16. The Scheiders then say the assignments of their Note and Mortgage were invalid under New York law because they violated the terms of the PSA itself.  *See* Blue

---

[11]     The Scheiders rely on *Bank of America, N.A. v. Bassman FBT, LLC*, 981 N.E.2d 1 (Ill. App. Ct. 2012), for the proposition that a borrower may challenge an assignment on grounds that that would render the assignment void, and assert that the district court "adopted the *Bassman* Court's finding that a transfer in contravention of a trust's terms is voidable rather than void." Blue Br. 17-18.  To the contrary, the district court noted *Bassman* and then expressly *declined to follow it* because "the courts within this Circuit, and even within the [District of South Carolina], have chosen a contrary path."  (J.A. 416-17.)  The district court did not adopt any part of *Bassman* or similar decisions.

Br. 18.  The district court rejected both arguments on the ground that the Scheiders lack standing to invoke the PSA.[12]  (J.A. 412-17.)  The district court was right.

As explained above, the Scheiders must be parties to, or intended third-party beneficiaries of, a contract before they can claim the benefits of that contract.  The parties to the PSA are IndyMac MBS, Inc. (the depositor to the trust), IndyMac Bank, FSB (the seller and servicer of the mortgage loans), and Deutsche Bank (as trustee for the trust).  (J.A. 426.)  The Scheiders are not, and in their brief do not claim to be, parties to the PSA.  The Scheiders also are not, and in their brief do not claim to be, intended third-party beneficiaries of the PSA.[13]  Thus, the Scheiders may not invoke the PSA to change the applicable law or invalidate the assignments of their Note and Mortgage.

---

[12]    This reference to "standing" simply refers to a party's right to claim the benefits of a contract.  This Court in *Wolf* described the issue in terms of "prudential standing," noting that "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties.'"  512 Fed. Appx. at 342.

[13]    "To qualify as a third-party beneficiary under a contract, a third party must show 'that the intent of the contracting parties was to confer a direct and substantial benefit on the third party.'"  *TCX, Inc. v. Commonwealth Land Title Ins. Co.*, 928 F. Supp. 618, 623 (D.S.C. 1995).  "In order to determine whether the parties [to the PSA] intended [the Scheiders] to be [] third-party beneficiar[ies], [this Court] must look within 'the four corners of the [PSA].'"  *R.J. Griffin & Co.*, 384 F.3d at 164.  The Scheiders "[are] not referred to, either directly or indirectly, in any part of the [PSA]" and thus are not intended third-party beneficiaries of that contract.  *Id*. at 165.

26

The Scheiders are not the first borrowers to make these PSA-based arguments, which other federal circuits have rejected. *See*, *e.g.*, *Chapman v. Bank of Am.*, 2013 WL 5925988, at *2-3 (6th Cir. Nov. 6, 2013) (unpublished); *Reinagel*, 735 F.3d at 228; *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 n.4 (1st Cir. 2013); *Edward v. BAC Home Loans Serv., L.P.*, 2013 WL 4400102, at *2 (11th Cir. Aug. 16, 2013) (unpublished) (per curiam).  Put simply, a borrower "is not a third party beneficiary of the PSA" and therefore "lack[s] standing to object to any breaches of the terms of the PSA."  *In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) (per curiam).  In various contexts, "a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, *i.e.*, the PSA."[14]  *In re Walker*, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) (collecting cases); *accord In re Kain*, 2013 WL 1115597, at *2 (D.S.C. Mar. 18, 2013).

---

[14]     Even if the Scheiders had standing to challenge the validity of the assignments on grounds that would render the assignments void rather than merely voidable, they could not rely on alleged violations of the PSA.  *See Reinagel*, 735 F.3d at 224-25 ("even assuming that the Reinagels are third-party beneficiaries, the fact that the assignments violated the PSA—a separate contract—would not render the assignments void, but merely entitle the Reinagels to sue for breach of the PSA").

27

Similarly, other courts have rejected borrowers' attempts to invoke a PSA to change the applicable law. *See In re Washington,* 468 B.R. 846, 852-53 (Bankr. W.D. Mo. 2011) (alleged violations of a PSA were "irrelevant to Deutsche Bank's standing to enforce the Note under the Missouri Uniform Commercial Code"); *In re Walker*, 466 B.R. at 281-84 (rejecting the borrower's attempted "end run" around the Pennsylvania UCC by invoking a PSA governed by New York law); *In re Smoak*, 461 B.R. 510, 521 (Bankr. S.D. Ohio 2011) ("the PSA does not change who the holder (or other person entitled to enforce) the Note is under Ohio's version of the UCC"). As the court in *In re Walker* explained, "the Note's status as a negotiable instrument was established at the outset of the transaction—when the [borrower] executed the Note in favor of [the Lender]—long before the assignment of the Note to the Trust. It therefore is difficult to understand how a later agreement (the PSA)—to which the [borrower] is not a party—could alter the nature of the contract and instrument she executed years earlier." 466 B.R. at 284.

In sum, the district court properly concluded that the Scheiders "lack standing to question the validity of the assignment of the note based on alleged violations of the PSA."[15] (J.A. 417.)

---

[15] Even if the Scheiders had standing to invoke the PSA, they failed to produce *evidence* of any violation of the PSA in response to the motion for summary judgment. For example, although the Scheiders have *alleged* that the Note was not transferred to the trust in a form showing all intervening indorsements, *see* Blue Br. 14 & 35, they never *showed* that the document actually transferred to the trust

C.    <u>The district court properly rejected the Scheiders' claim that MERS cannot assign the right to foreclose.</u>

The Scheiders also argue that the assignment of their Mortgage was invalid because MERS lacked authority to make such an assignment.  *See* Blue Br. 28-34. The Scheiders are not parties to the written Assignment of Mortgage executed by MERS and Deutsche Bank.[16]  (J.A. 279-80.)   But even if the Scheiders had standing to challenge the Assignment, their argument fails because the Mortgage itself authorized MERS to transfer its rights under the Mortgage, including the right to foreclose.   And other courts have recognized that MERS may make assignments of this kind.

The Scheiders say MERS lacked any authority to assign the Mortgage.  But the Mortgage expressly identified MERS as the "mortgagee" and the "nominee for Lender and Lender's successors and assigns."  (J.A. 261.)   The Scheiders "mortgage[d], grant[ed], and convey[ed]" the property to "MERS (solely as nominee for Lender and Lender's successor and assigns) *and to the successors and*

_____

was inadequate.  And to the extent that the Scheiders have *alleged* that their Note was not transferred within the time allowed by the PSA, *see* Blue Br. 12, they failed to *show* that the transfer actually occurred outside that window of time.

[16]    The August 10, 2011 Assignment of Mortgage was signed by JC San Pedro, a vice-president of MERS, and was properly witnessed and notarized.  (J.A. 280.) The Scheiders have not challenged San Pedro's authority to execute the Assignment of Mortgage on behalf of MERS, or any other aspect of the transaction.  Their sole complaint is that MERS lacked authority to assign the Mortgage.

29

*assigns of MERS*, with power of sale." (J.A. 262.) MERS held "legal title to the interests granted" in the Mortgage and also "ha[d] the right . . . to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling [the Mortgage]." (J.A. 262.) So by the plain terms of the Mortgage itself, MERS had the right to enforce the Mortgage through foreclosure, and it was free to assign those rights to another party. That is all MERS did in the Assignment of Mortgage.[17]

It is not uncommon for MERS to be named as a mortgagee (or beneficiary of a deed of trust), and then to assign its rights to another party before foreclosure. That is exactly what happened in *Wolf*: "The deed of trust named [MERS] as the lender's nominee, granting MERS legal title to the deed of trust and giving MERS legal rights, including the right to foreclose." 512 Fed. Appx. at 338; *see also Kramer v. Federal Nat'l Mortg. Ass'n*, 2013 WL 5273224, at *1 (5th Cir. Sept. 19, 2013) (unpublished) (per curiam); *Carmack v. Bank of N.Y. Mellon*, 2013 WL 4529871, at *1 (6th Cir. Aug. 27, 2013) (unpublished); *Burnett v. MERS, Inc.*, 706 F.3d 1231, 1234 (10th Cir. 2013); *Reese*, 2012 WL 1952819, at *1; *In re Kain*, 2013 WL 1115597, at *1. This Court in *Wolf* concluded that "MERS had authority to assign the note" and the accompanying deed of trust, 512 Fed. Appx. at 339,

---

[17]    Even if MERS could not exercise these rights on its own behalf, it surely could do so on behalf of the Lender or its assigns. The Scheiders have not argued that the Lender or its assigns somehow lack authority to foreclose on the property or assign their interests under the Mortgage to another party.

345, and other courts likewise have confirmed that MERS may assign its rights to property interests under a mortgage or deed of trust, *see Kramer*, 2013 WL 5273224, at *1; *Carmack*, 2013 WL 4529871, at *5-6; *Burnett*, 706 F.3d at 1237; *Sheppard v. BAC Home Loans Serv., LP*, 2012 WL 204288, at *5 (W.D. Va. Jan. 24, 2012); *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 640 (E.D. Va. 2010), *aff'd*, 441 Fed. Appx. 202 (4th Cir. 2011) (unpublished) (per curiam).

MERS did nothing more than exercise the rights granted to it in the Mortgage itself—rights expressly granted to it by the Scheiders themselves. As the named mortgagee (and as nominee for the Lender or its assigns), MERS held legal title to the property as well as the "power of sale" and the right to foreclose. (J.A. 262.) Such interests are assignable absent some restriction, and here the Mortgage itself suggests that those interests may be given to the "successors and assigns" of MERS. (J.A. 262.) Given the plain terms of the Mortgage, there can be no doubt that MERS was authorized to assign its interests under the Mortgage.[18]

In any event, the Scheiders should be estopped from claiming that MERS is not a mortgagee and challenging its authority to assign its interests under the

---

[18]    Under South Carolina law, "the assignment of a mortgage does not need to be recorded, and failure to do so has no effect on the rights of the assignee." *BAC Home Loans Serv., L.P. v. Kinder*, 731 S.E.2d 547, 549 (S.C. 2012). Nevertheless, the Assignment of Mortgage here was recorded. (J.A. 279.)

Mortgage. In that contract, the Scheiders made MERS the "mortgagee" with "power of sale" and the right to foreclose, and they gave property rights to MERS and its "assigns." (J.A. 261-62.) Having taken the benefit of the Mortgage—which provided the necessary security for their $1,178,000 loan—the Scheiders cannot now take a position contrary to the terms of the Mortgage.

The South Carolina Supreme Court approved such an estoppel theory in *Brown v. Prudential Insurance Company of America*, 40 S.E.2d 637, 642 (S.C. 1946), noting that its conclusion about the effect of a conveyance of real property was "fortified and confirmed by the construction placed thereon by the parties themselves" before the litigation, and they were "now estopped to take a contrary position." Likewise this Court, in a case governed by South Carolina law, stated that a party may not deny the validity of a contract after taking and keeping its benefits. *See National Manufacture & Stores Corp. v. Whitman*, 93 F.2d 829, 831-32 (4th Cir. 1938).[19] And a district court applying South Carolina law noted that this Court "has held that under the doctrine of quasi-estoppel, a party cannot accept or retain the benefits of a transaction . . . and take a position inconsistent

---

[19]    *Cf. Hedgepeth v. Parker's Landing Prop. Owners Ass'n*, 388 Fed. Appx. 242, 247 (4th Cir. 2010) (unpublished) (under North Carolina law, "when a party takes and retains benefits under a transaction or instrument, which it has the right to accept or reject, that party's retention of the benefits acts to ratify the transaction or instrument such that the party cannot avoid its obligation or effect under the transaction or instrument by taking a position inconsistent with the transaction or instrument").

therewith." *BCD, LLC v. BMW Mfg. Co.*, 2008 WL 304878, at *16 (D.S.C. Jan. 31, 2008), *aff'd*, 360 Fed. Appx. 428 (4th Cir. 2010) (unpublished).  The Scheiders took the benefits of their Mortgage for nearly four years before deciding that it was unenforceable by the named mortgagee.  They should be estopped from taking that position simply to avoid the consequences of their admitted default.  *Cf. Farkas v. GMAC Mortg., LLC*, 2013 WL 6231114, at *5 (5th Cir. Dec. 2, 2013) (applying the doctrine of quasi-estoppel under Texas law to defeat a borrower's challenge to foreclosure based on a claimed statutory violation).

* * *

The Scheiders' brief is "filled with allegations of fraud in the mortgage industry and discussions of the financial crisis that has plagued the country of late.  But these seem interposed mainly to distract attention from what in reality is a straightforward commercial case."  *Horvath*, 641 F.3d at 626.  The Note was indorsed in blank and transferred to IndyMac Bank, FSB, which then indorsed the Note in blank and transferred it to Deutsche Bank.  Under South Carolina law, the Note is enforceable by its holder.  And under South Carolina law, the Mortgage followed the Note, so that the holder of the Note also has the right to enforce the Mortgage (through foreclosure) with or without a formal assignment.  But here, there was a valid written assignment by MERS, the named mortgagee, to Deutsche Bank.   The Scheiders say they can stay on their mortgaged property,

33

notwithstanding their default, simply because their loan was securitized back in 2006. As this Court made clear in *Horvath*, "[t]his cannot be—and is not—the law." *Id*. at 624.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

s/ Jeffrey M. Anderson

Counsel for Appellees

OF COUNSEL

Marc James Ayers
Jeffrey M. Anderson
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203
(205) 521-8000
(205) 521-8800 (fax)
mayers@babc.com
janderson@babc.com

B. Rush Smith, III
Brian P. Crotty
Sarah B. Nielsen
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street / 17th Floor
Columbia, SC  29201
(803) 799-2000
(803) 256-7500 (fax)
rush.smith@nelsonmullins.com
brian.crotty@nelsonmullins.com
sarah.nielsen@nelsonmullins.com

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.** 13-1821        **Caption:** Scheider v. Deutsche Bank National Trust Company

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____8,591_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]    this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word _____ [*identify word processing program*] in
   14 point Times New Roman _____ [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Jeffrey M. Anderson _____

Attorney for Appellees _____

Dated: 12/13/13 _____

## CERTIFICATE OF SERVICE

I certify that on December 13, 2013, the foregoing Brief of Appellees was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the address listed below:

Antonia T. Lucia
Roberts Vaux
Mark. S. Berglind
VAUX & MARSCHER, PA
Post Office Box 769
Bluffton, SC  29910.


s/ Jeffrey M. Anderson
Counsel for Appellees